# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Docket no. 2:16-cr-20-GZS |
| CAREY ACKIES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION IN LIMINE TO PRECLUDE
## TESTIMONY OF CONFIDENTIAL INFORMANTS

Before the Court is Defendant Carey Ackies's Motion in Limine to Preclude Testimony of Confidential Informants Relating to 404(b) Evidence (ECF No. 193). After carefully considering the Motion and the Government's Response (ECF No. 195), the Court DENIES the Motion.

This matter is set for trial beginning November 27, 2017. Defendant is charged in a two-count Indictment with (1) conspiracy to possess with intent to distribute heroin and 28 grams or more of cocaine base on or about January 18, 2016, and (2) possession with intent to distribute heroin and 28 grams or more of cocaine base, and aiding and abetting such conduct, on or about January 18, 2016. (See Indictment (ECF No. 9), PageID #s 39-40.) Defendant seeks to exclude testimony by two cooperating witnesses regarding their involvement with Defendant in drug transactions that predate January 18, 2016, the date of the drug seizure that lead to Defendant's arrest. The Government has represented to Defendant that it anticipates that one witness, Witness #1, will testify in part

> that he met [Defendant] . . . in approximately April 2015 through another acquaintance for the purpose of purchasing heroin for further distribution in the District of Maine. At this initial meeting, he and [Defendant] also discussed [Defendant] supplying cocaine base (crack-cocaine) and oxycodone. Prices were also discussed. He received a delivery within a short period of time. He communicated with [Defendant] but met couriers ("runners"), usually at the

> Concord Coach Bus Lines station in Portland, Maine, where the exchanges (drugs for cash) would occur. Most deliveries involved more than one substance. Most often, it was crack and heroin and the quantities were, at times, significant. The most frequent runner he met was [Witness #2], who he believed was dating [Defendant]'s sister. [Witness #2] was the person arrested on January 18, 2016 . . . [Witness #1] also met [Defendant] twice in New York where they discussed business, including most recently, around Christmas 2015. He provided [Defendant] with drug proceeds on each occasion and received a small amount of drugs . . . Before having law enforcement contact on January 14, 2016, he and [Defendant] discussed the delivery of 400 grams of heroin and 400 grams of crack-cocaine to the District of Maine for further distribution.

(Def.'s Mot. in Limine (ECF No. 193), PageID #s 995-96.) The Government has represented to Defendant that it anticipates that the other witness, Witness #2, will testify in part

> that he met [Defendant] through [Witness #2]'s fiancée . . . Because he needed money, [Witness #2] started making drug runs for [Defendant]. He delivered drugs for [Defendant] in New York and to the District of Maine. His compensation depended on where [Defendant] asked him to deliver drugs to, and usually he was compensated from the money that was provided to him by the customers. He traveled to Maine by Amtrak and bus. Most of the time, he engaged in backpack exchanges at the bus station. Usually, he was not aware of how much, or what type of drugs, he was transporting. He knew that [Witness #1] was one of [Defendant]'s customers in the District of Maine. He delivered packages to [Witness #1] and received money from him. After the deliveries to the District of Maine, [Witness #2] returned to New York with the proceeds and delivered them to [Defendant] . . . He previously picked up packages of drugs from [Defendant] at [Defendant's] apartment, and believes that [Defendant] had a secondary "stash" location.

(Def.'s Mot. in Limine, PageID # 997.) Defendant contends that this evidence is neither intrinsic to the charged offenses nor admissible pursuant to Federal Rule of Evidence 404(b), and is further inadmissible pursuant to Rule 403. (Def.'s Mot. in Limine, PageID #s 999-1002.)

As Defendant recognizes, evidence that is "intrinsic to," or "comprises part and parcel of" an offense charged in an indictment is not governed by Federal Rule of Evidence 404(b), which limits "other acts" evidence. United States v. Gobbi, 471 F.3d 302, 311 (1st Cir. 2006). "Intrinsic evidence includes prior acts that are part of [the] necessary description of the events leading up to the crime[] or that go to an element of the charged offense." United States v. Souza, 749 F.3d 74,

2

84 (1st Cir. 2014) (alterations in original) (quotation marks omitted). The Court readily determines that the contacts and drug transactions between the cooperating witnesses and Defendant that precede the date charged in the Indictment are intrinsic to the charged offenses, for two reasons. First, the evidence of prior contacts and transactions is "necessary to complete the story of the charged crime," United States v. Taylor, 284 F.3d 95, 101 (1st Cir. 2002), and to explain how the cooperating witnesses and Defendant "came together" to form the charged drug conspiracy, United States v. Robles-Alvarez, 874 F.3d 46, 51 (1st Cir. 2017). Second, the evidence of prior contacts and transactions goes to prove an element of the charged conspiracy, the existence of an agreement between Defendant and others to distribute drugs from New York to Maine. See United States v. Medina-Martinez, 396 F.3d 1, 5 (1st Cir. 2005) ("To prove conspiracy in a criminal case, the government must prove beyond a reasonable doubt that an agreement existed to commit the underlying substantive offense . . . ."); see also United States v. Williams, No. 08-CR-112-P-S, 2009 WL 387396, at *1 (D. Me. Feb. 13, 2009) (admitting evidence regarding the recovery of certain firearms as intrinsic to a charged offense because the evidence "may assist the jury in concluding that the alleged conspirators were engaged in the business of selling in New York City firearms purchased in Maine").

The Court finds United States v. Robles-Alvarez to be instructive. In that case, the First Circuit concluded that the district court did not err in admitting evidence of a drug smuggling trip from Antigua to Puerto Rico via St. Martin despite the fact that this trip preceded the trips comprising the charged conspiracy to import drugs from St. Martin to Puerto Rico. Robles-Alvarez, 874 F.3d at 51. The First Circuit explained:

> [T]he district court did not abuse its discretion in admitting evidence of the Antigua smuggling trip because such evidence was intrinsic to the charged conspiracy. Clearly, the meeting between the appellant, Robles-Ortiz, and Rodríguez in St. Martin, during which the group discussed the possibility of becoming partners in a

3

> drug smuggling operation, was part of the necessary description of the events leading up to the crime. Absent this evidence, the jury could have been left wondering about how the various co-conspirators came together. And, in turn, evidence of the appellant's and Robles-Ortiz's participation in a drug smuggling trip to Antigua not only explained why they were passing through St. Martin, but also why Rodríguez would have trusted the pair and decided to go into business with them.

Id. (internal citation and quotation marks omitted). In this case, as in Robles-Alvarez, evidence of the prior contacts and transactions involving the cooperating witnesses and Defendant helps explain the origins of the conspiracy and the nature of the relationship between the conspirators. Defendant's attempts to distinguish Robles-Alvarez are unconvincing.

In the alternative, the Court concludes that the evidence Defendant seeks to exclude is admissible pursuant to Federal Rule of Evidence 404(b) to prove motive, intent, preparation, plan, knowledge, or identity.[1] See Fed. R. Evid. 404(b)(2); United States v. Green, 698 F.3d 48, 55 (1st Cir. 2012) ("We have repeatedly held that, in a conspiracy case, evidence of other bad acts . . . can be admitted to explain the background, formation, and development of the illegal relationship, and, more specifically, to help the jury understand the basis for the co-conspirators' relationship of mutual trust." (quotation marks omitted)). At trial, Defendant is free to assert any specific objection to Rule 404(b) being used as an alternative basis for admitting the evidence Defendant seeks to exclude. At Defendant's request, the Court will provide the jury a limiting instruction as to any evidence admitted under Rule 404(b). Finally, regardless of the basis for admission of the challenged evidence, the Court determines that its probative value is not substantially outweighed by a danger of unfair prejudice. See Fed. R. Evid. 403.

---

[1] The Government represents that it provided Defendant with the required notice pursuant to Federal Rule of Evidence 404(b)(2). (See Gov't Resp. (ECF No. 195), PageID # 1016 n.3.)

For the foregoing reasons, Defendant's Motion is DENIED WITHOUT PREJUDICE to Defendant reasserting any objection at trial to testimony by the cooperating witnesses regarding prior contacts and drug transactions with Defendant.

SO ORDERED.

                                            /s/ George Z. Singal
                                             United States District Judge

Dated this 22nd day of November, 2017.